IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VIRGINIA CHAU,

        Plaintiff,

v.                                         CIVIL ACTION NO. 2:19-cv-00452

AIR CARGO CARRIERS, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to remand filed by Plaintiff, Virginia Chau, as Administratrix of the Estate of Anh Kim Ho ("Plaintiff"). (ECF Nos. 9, 15, 64.) For the reasons discussed below, the motion is **GRANTED**.

*I.     BACKGROUND*

The factual background and proper legal standard implicated in this case is set forth fully in this Court's prior Memorandum Opinion and Order and need not be repeated at length here. (*See* ECF No. 49.) The Court will outline only the factual and procedural background relevant to the present motion.

This action arises from an airplane crash that occurred on May 5, 2017, at Yeager Airport in Charleston, West Virginia. (ECF No. 1-1 at 6 ¶ 24.) Defendant United Parcel Services Co. ("UPS") operates a cargo airline that contracts with Defendant Air Cargo Carriers' ("ACC") to provide short haul airline services. (*Id.* at 4 ¶ 2, 5 ¶¶ 3, 6.) ACC's Flight No. 1260 crashed while completing a regularly scheduled cargo route between Louisville, Kentucky, and Charleston, West

Virginia. (*Id.* at 9 ¶ 24.) Plaintiff's decedent, Anh Kim Ho, was the first officer on the aircraft, and Jonathan Pablo Alvarado, was the captain piloting the plane. (*Id.* at 4 ¶ 1, 5 ¶ 5, 9 ¶ 24.) Both Anh Ho and Alvarado were killed in the crash. (*Id.* at 10 ¶ 26.)

On May 3, 2019, Plaintiff filed this action in the Circuit Court of Kanawha County, West Virginia, asserting claims against UPS, ACC, and Alvarado. On June 13, 2019, UPS filed a notice of removal, asserting federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) Plaintiff filed the present motion to remand on June 27, 2019. (ECF Nos. 9, 15.) This Court granted the motion in part in its November 14, 2019, Memorandum Opinion and Order on the basis that Plaintiff's claims presented no federal question jurisdiction. (ECF No. 49.) After hearing oral argument on the motion with respect to diversity jurisdiction, this Court found that Alvarado was a citizen of Texas at the time of his death and that complete diversity exists between the parties to permit removal under 28 U.S.C. § 1332. Nonetheless, Plaintiff asserted at the hearing on December 16, 2019, that the removal was defective because UPS failed to obtain consent from the Sheriff of Kanawha County as the Administrator of the Estate of Alvarado ("Estate"). The Court ordered supplemental briefing on the issue, which is now fully briefed and ripe for adjudication.[1]

## II. DISCUSSION

The sole issue before the Court is to determine whether the Estate's consent was required for removal of this action to federal court. Under U.S.C. § 1446(a), "[a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending

---

[1] On December 13, 2019, the Estate also filed a motion to dismiss, (ECF No. 55), asserting the same arguments as those raised in its response to Plaintiff's supplemental motion to remand, (ECF No. 68). Plaintiff filed a response to the motion, (ECF No. 63), and the Estate timely replied, (ECF No. 68).

a notice of removal." Generally, all defendants must unanimously join in or consent to removal within thirty days of being served with the initial pleading. *See* 28 U.S.C. § 1446(b)(2). This requirement, commonly known as the "rule of unanimity," requires that each defendant "register to the Court its official and unambiguous consent to a removal petition filed by a co-defendant." *Stonewall Jackson Mem'l Hosp. v. Am. United Life Ins. Co.*, 963 F. Supp. 553, 558 (N.D. W. Va. 1997). *See Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (stating that the rule of unanimity is consistent with the court's obligation to construe removal jurisdiction strictly because of the significant federalism concerns implicated."). Courts have long recognized that an exception to the rule of unanimity exists for nominal parties, who are not required to consent to removal. *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013); *Shaffer v. Northwestern Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D. W. Va. 2005) (finding that "a co-defendant need not join if that defendant is merely a nominal or formal party defendant"). "This 'nominal party exception' ensures that only those parties with a palpable interest in the outcome of a case, and not those without any real stake, determine whether a federal court can hear a case." *Hartford Fire Ins. Co.*, 736 F.3d at 259.

The Fourth Circuit has clarified that "[n]ominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Id.* at 260. Stated differently, "the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Id.* "Determining nominal party status is a practical inquiry," based "on the particular facts and circumstances of a case." *Id.* In applying this standard, the Fourth Circuit found in *Hartford* that a defendant was nominal because the plaintiff sought neither monetary nor declaratory injunctive relief against it, and, accordingly, the defendant in no way would be directly affected by the outcome of the case.

*Id.* at 261. In addition, the court stated that the defendant's nominal status was evident considering that if it were "not included in this action, it would have no effect on [the plaintiff's] ability to be made whole by the other [defendants]." *Id.*

In this case, the Estate did not consent to removal within the 30-day limit imposed by statute. Whether removal is proper, thus, turns on whether the Estate should be considered a nominal party or a real party in interest whose failure to join in the notice of removal requires the Court to remand this case to state court.

UPS argues that the Estate is a nominal party and, as a result, it was not required to obtain its consent before removing the case to this Court. In support of this proposition, UPS first argues that the Estate is a nominal defendant because it contains no assets to satisfy any judgment against it. (ECF No. 67 at 4–6.) UPS cites to the Administrator's May 17, 2019, appraisement of the Estate, which states that the Estate has no assets. (ECF No. 1-8.) UPS contends that, because the Estate is essentially judgment proof, the Court should find that it is a nominal party. However, the existence or non-existence of assets is not the test for defining a nominal party. Instead, the Court is to inquire "whether the non-removing party has an interest in the outcome of the case." *Hartford Fire Ins. Co.*, 736 F.3d at 261. In this case, Plaintiff seeks monetary relief from the Estate, and the Estate has filed an answering denying liability creating a material dispute between the parties. Further, Plaintiff's claims against Alvarado are separate and distinct from those asserted against UPS and ACC.[2] Thus, it cannot be said that the Estate's "absence would not prevent the Court from being able to enter final judgment in favor of the plaintiff . . . without otherwise materially

---

[2] Specifically, Plaintiff asserts claims for deliberate intent against ACC (Count I), negligence against UPS (Count II), and fraudulent misrepresentation against Alvarado (Count III). (ECF No. 1-1.) *See McNeilly v. Greenbrier Hotel Corp.*, 16 F. Supp. 3d 733, 738 (S.D. W. Va. 2014) (stating "[t]he basic elements of a negligence claim are duty, breach of that duty, causation, and damages."). *See also Trafalgar House Constr. v. ZMM, Inc.*, 576 S.E.2d 294, 300 (W. Va. 2002) ("Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud.").

circumscribing the relief due." *Id.* In sum, the contention that the Estate may be judgment proof alone is insufficient to deem the Estate a nominal party.

Second, UPS argues that the Estate is a nominal party because Alvarado is immune from liability for Plaintiff's claim against him under the West Virginia Workers' Compensation Statute, W. Va. Code § 23-1-1, *et seq*. Under West Virginia law, employers contributing to the state workers' compensation fund are immune from suits predicated upon the injury or death of an employee. *See* W. Va. Code § 23–2–6 (2005). This immunity extends to "every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intent." W. Va. Code § 23-2-6a. Such immunity can only be lost in one of two ways: "(1) by defaulting in payments required by the Act or otherwise failing to comply with the provisions of the Act, or (2) by deliberately intending to produce injury or death to the employee."[3] *Smith v. Monsanto Co.*, 822 F. Supp. 327, 330 (S.D. W. Va. 1992) (citations omitted); *Bell v. Vecellio & Grogan, Inc.*, 475 S.E.2d 138, 141 (W. Va. 1996); W. Va. Code § 23-4-2(c).

As further detailed in the Estate's Motion to Dismiss,[4] UPS contends there is no basis for imputing liability against the Estate pursuant to West Virginia's Workers' Compensation Statute

---

[3] The statute sets forth two distinct methods of establishing deliberate intention. First, deliberate intention may be established by showing that the defendant employer or co-employee "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death." W. Va. Code § 23-4-2(d)(2)(i). Section 23-4-2(d)(2)(i) further provides that "[t]his standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (i) Conduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct." The second method of establishing deliberate intention requires the plaintiff to prove a violation of five distinct factors, *see* W. Va. Code § 23-4-2(d)(2)(ii); however, the West Virginia Supreme Court of Appeals has clarified that this method applies only to actions against employers, not co-employees. *See Young v. Apogee Coal Co., LLC*, 753 S.E.2d 52, 61 (W. Va. 2013); *Adkins v. Consolidation Coal Co.*, 856 F. Supp. 2d 817, 824 (S.D. W. Va. 2012) ("The court concludes that employee immunity may be lost under section 23-4-2(d)(2)(i), but not under section 23-4-2(d)(2)(ii).").

[4] As noted previously, the Estate asserts the same arguments in its motion to dismiss as those raised in response to Plaintiff's supplemental motion to remand, namely, that Alvarado is immune from suit for wrongful death brought by his former co-employee, and the Complaint fails to allege a cause of action against Alvarado that would allow Plaintiff to avoid statutory immunity under the Workers' Compensation Act. (ECF No. 55.)

because the Complaint fails to allege that Alvarado acted with "deliberate intention" to inflict injury. Plaintiff responds that the Estate is not entitled to statutory immunity under the Workers' Compensation Statute for two reasons. First, she contends that the Estate does not qualify for immunity because Alvarado's purportedly fraudulent act was not taken in furtherance of the employer's business and, thus, falls outside a statutory deliberate intent claim. (ECF No. 63 at 9.)

Section 23-2-6a of the Workers' Compensation Statute extends immunity to co-employees only when such employee "is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention." In the Complaint, Plaintiff claims that Alvarado made fraudulent misrepresentations about his piloting qualifications and proficiency in his application to work for ACC. (ECF No. 1-1 at 17 ¶ 50.) The Complaint states that the Pilot Records Improvement Act and standard aviation industry practices required Alvarado to be truthful on his application and that his misrepresentations were relied upon as a basis for his employment. (*Id.*) Plaintiff further alleges that her decedent relied on the fact that Alvarado was truthful in his application and "would not have trusted her life by flying with [him] if she knew he had materially misrepresenting [*sic*] his proficiency, pilot skills and failed historical check rides, specifically material to complex instrument landings and go around judgment." (*Id.*) Finally, Plaintiff claims that Alvarado's fraudulent misrepresentations caused her decedent's death. (*Id.* ¶ 51.) The alleged fraudulent act on the part of Alvarado was not made in furtherance of ACC's business or interest. To the contrary, the pleadings infer that Alvarado made fraudulent misrepresentations solely for his independent interest and purpose of obtaining employment. *See Honeycutt v. United States*, 622 F. Supp. 2d 350, 354 (S.D. W. Va. 2008) (holding that an employee was not acting within the scope of his employment because his actions "could only have arisen from some external, independent and personal motive."). Consequently, as Plaintiff's claim against the Estate fall

6

outside the scope of § 23-2-6a, the Estate is not entitled to immunity under the Workers' Compensation Statute.

Plaintiff also argues that the Estate is not immune from liability because ACC failed to comply with the statutory requirements to qualify for employer immunity under West Virginia Code § 23-1-1, *et seq*. (ECF No. 63 at 7–8.) In order to receive the benefits under the Workers' Compensation Statute, employers are "required to subscribe to and pay premium taxes into the Workers' Compensation Fund." W. Va. Code §23-2-1(a). In addition, "at the time of making application to the commission", foreign corporation employers must "furnish the commission with a certificate from the Secretary of State" enabling it to legally do business in West Virginia. W. Va. Code §23-2-1(f); *see also State ex rel Frazier v. Hrko*, 510 S.E.2d 486, 493 (W. Va. 1998) ("When an employer subscribes to and pays premiums into the Fund, and complies with all other requirements of the Act, the employer is entitled to immunity for any injury occurring to an employee and shall not be liable to respond in damages at common law or by statute.").

Here, ACC is a foreign limited liability company organized under the laws of Wisconsin. (ECF No. 1-1 at 4 ¶ 2; ECF No. 4 at 2.) Plaintiff has presented evidence establishing that ACC did not apply for a certificate of authority to do business in West Virginia until August 12, 2019, more than three months after this lawsuit was filed and over two years after the accident in this case occurred. (ECF No. 63-2.) Based on this evidence, Plaintiff argues that ACC did not fully comply with the provisions of the statute, in particularly § 26-2-1(f) for foreign corporations, and, thus, there is no exemption to extend under West Virginia Code § 23-2-6a to the Estate. *See* W. Va. Code §§23-2-6, 23-2-6a (providing that an employee's exemption from common law liability must extend through its employer's liability exemption).

While it is apparent that ACC failed to apply for a certificate of authority and submit the

same to the commission in accordance with West Virginia Code § 26-2-1(f), the West Virginia Supreme Court of Appeals has advised courts to disregard technical deficiencies in complying with the Workers' Compensation Statute. *See Fair v. Korhumel Steel & Aluminum Co.*, 473 F.2d 703, 705 (4th Cir. 1973) (stating the court is "mindful that the West Virginia Act should not be viewed with an overly technical eye" (citing *Mains v. J. E. Harris Co.*, 197 S.E. 10 (W. Va. 1938)). As Defendants highlight, the West Virginia Insurance Commissioner's coverage verification records show that ACC obtained and maintained workers' compensation insurance, as required by law, at the time of the accident and continuing to this day. Thus, to the extent West Virginia Code § 26-2-1(f) required ACC to also apply for and submit a certificate of authority, ACC's failure to complete this statutory step is simply a technical deficiency that does not foreclose the right to qualify for exemption under the statute.

Nevertheless, the Court has already determined the Estate is not statutorily immune from Plaintiff's fraudulent misrepresentation claim. Thus, it is of no consequence for purposes of resolving Plaintiff's motion to remand whether ACC's omissions are merely technical or mandatory under the Workers' Compensation Statute. Likewise, given the Estate's motion to dismiss relies solely on immunity under the Workers' Compensation Statute, the Court **DENIES** the motion to dismiss for the reasons discussed herein. (ECF No. 55.) Defendants also have not satisfied their burden of establishing that the Estate is a nominal party. Accordingly, the rule of unanimity renders UPS' removal defective, and the case must be remanded to state court.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand, (ECF Nos. 9, 15, 64), and **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia. The Court further **DIRECTS** the Clerk to remove this matter from the Court's docket.

8

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and a certified copy to the Clerk of the Circuit Court of Kanawha County.

ENTER: February 10, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE